826 So.2d 528 (2002)
A.J., A Child, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-2285.
District Court of Appeal of Florida, Fifth District.
September 27, 2002.
James B. Gibson, Public Defender, and Anne Moorman Reeves, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Robert E. Bodnar, Jr., Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, C.J.
A.J., a juvenile, appeals the trial court's ruling committing her to a high-risk residential *529 program.[1] A.J. contends that the trial court abused its discretion by departing from the Department of Juvenile Justice's recommendation that she be returned to a moderate-risk residential program.[2] A.J. argues that the trial court's reasons for departure were neither supported by a preponderance of the evidence nor related to A.J.'s specific needs. We disagree and affirm.
On 24 April 2001, A.J. had a verbal altercation with her brother. A.J. called the police and stated to the dispatcher, "If you don't get someone out here, I am gonna cut him up." The dispatcher talked A.J. into putting away the knife. When the police officer arrived, A.J. told the officer that the knife was in her purse. A.J. opened her purse, and the officer retrieved a Stanley utility knife with a retractable blade. A.J. told the officer that she had pulled out the knife, but did not expose the blade. A.J. was arrested and charged with aggravated assault with a deadly weapon without intent to kill.[3]
Prior to the altercation with her brother, A.J. had committed ten offenses including battery, assault, and disorderly conduct. She was previously committed to a moderate-risk residential program for five and a half months; however, after release from the program, A.J. committed more offenses including a battery eight days after release and disorderly conduct. In the instant case, A.J. entered a guilty plea to improper exhibition of a dangerous weapon.[4]
Despite this criminal history and her previous unsuccessful term in the moderate-risk residential program, the department recommended that A.J. again be committed to a moderate-risk residential program. Further, a social worker, who had worked with A.J. for over a year, reported that A.J. "presents low cognitive abilities, low frustration tolerance, moderate depressed mood, and a traumatic past history." The social worker recommended that A.J. be placed in a residential treatment facility with a mental health component.
At the disposition hearing, the court indicated that it was not satisfied with the *530 department's recommendation that A.J. again be committed to a moderate-risk residential program. The court stated that A.J. had been involved in crimes involving violent behavior for five years and that the most recent offense had escalated to use of a weapon. The trial court stated:
You have been given the benefits of the juvenile justice system in diverse programs to an inclusive of a program which the department is recommending that you go back to yet again. The only conclusion the court can draw is that you have learned precisely nothing. In order to assist you in learning that there are consequences to you[r] f[r]ee and voluntary acts, in order to assist you in obtaining the proper education, in order to assist you in becoming a productive law abiding citizen and in order to protect the community in which you live, it is the judgement of the court that you are a delinquent child, that the department's recommendation is inadequate and that you should be committed to ... the Department of Juvenile Justice to a high risk residential treatment facility.
This court has held that a court may not depart from the department's recommendations merely because it disagrees with those recommendations. See A.G. v. State, 737 So.2d 1244,1247 (Fla. 5th DCA 1999). However, section 985.23(3)(c), Florida Statutes, allows a court to depart from the department's recommendations provided that it states the reasons for the departure and establishes a basis for the departure by a preponderance of the evidence. Section 985.23(3)(c), Florida Statutes, provides:
The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons which establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department.
In A.G., in which we held that the trial court did not provide legally sufficient reasons for departure from the department's recommendation, this court stated that in order to depart from the department's recommendations, the court should refer to the commitment level as it relates to the juvenile's needs. Id. Further, in reversing the disposition, this court noted that the trial court did not establish the number of prior criminal acts and whether violence was involved. Id.
Similarly, in P.R. v. State, 782 So.2d 911, 913 (Fla. 5th DCA 2001), this court reversed a disposition because, while there was evidence of the juvenile's criminal history and the commission of new crimes despite completion of a moderate-risk residential program, the trial court did not "reference the characteristics of the restrictiveness level vis-a-vis the needs of the child." In P.R., upon imposition of sentence, the trial court stated:
[W]hen I look through here Phillip ... and I'm stunned ... trespass ... closed without sanctions, other felony closed without sanctions ... petty larceny, JASP ... criminal mischief, JASP ... burglary JASP, assault and battery, community control ... apparently you didn't do very well on that ... because... old cases reopened ... assault and battery, Nolle Pos ... disturbing the piece, [sic] nonfiled ... fired a weapon, missile into a dwelling, building or aircraft, Judicial warning ... and now we have grand thefts. Nobody has ever gotten your attention have they? Those *531 days are over. You'll be adjudicated delinquent. You'll be sentenced to a moderate risk residential program, following that you'll come out on ah ... community control, where you will obey the reasonable demands of your parents.
Id. at 911.
In the instant case, in contrast to A.G. and P.R., there were substantive reasons for the trial court's departure. A.J. committed eleven crimes, the majority of which involved violence. While the trial court did not articulate A.J.'s past criminal history in detail upon imposition of sentence, it did note throughout the hearing her past criminal activity and the fact that A.J.'s most recent crime involved a weapon. The trial court stated that it was not satisfied with the recommendation of commitment to a moderate-risk residential program because that program had failed. Here, the trial court noted A.J.'s criminal history and addressed A.J.'s needs in relation to the moderate-risk residential program that did not previously meet A.J.'s needs. See D.E.R. v. State, 744 So.2d 1244,1245-1246 (Fla. 5th DCA 1999) (holding that the trial court was justified in rejecting the department's recommendation that the juvenile be returned to community control because the last delinquent act occurred when the juvenile was under community control supervision). The trial court stated upon imposition of sentence that it was not practical to return A.J. to a program where she had learned precisely nothing; that A.J. needed to learn the consequences of her free and voluntary acts; and that a high-risk residential facility was necessary.
Therefore, the departure disposition is supported by a preponderance of the evidence. The trial court's departure from the department's recommendations is affirmed.
AFFIRMED.
PETERSON and PLEUS, JJ., concur.
NOTES
[1] Section 985.03(45)(c), Florida Statutes defines a high-risk residential program as:

Programs or program models at this commitment level are residential and shall not allow youth to have access to the community. Facilities are hardware-secure with perimeter fencing and locking doors. Facilities shall provide 24 hour awake supervision, custody, care, and treatment of residents. Youth assessed and classified for this level of placement require close supervision in a structured residential setting. Placement in programs at this level is prompted by a concern for public safety that outweighs placement in programs at lower commitment levels. The staff at a facility at this commitment level may seclude a child who is a physical threat to himself or herself or others. Mechanical restraint may also be used when necessary. The facility may provide for single cell occupancy.
[2] Section 985.03(45)(b), Florida Statutes, defines a moderate-risk residential program as:

Programs or program models at this commitment level are residential but may allow youth to have supervised access to the community. Facilities are either environmentally secure, staff secure, or are hardware-secure with walls, fencing, or locking doors. Facilities shall provide 24-hour awake supervision, custody, care, and treatment of residents. Youth assessed and classified for placement in programs at this commitment level represent a moderate risk to public safety and require close supervision. The staff at a facility at this commitment level may seclude a child who is a physical threat to himself or herself or others. Mechanical restraint may also be used when necessary.
[3] See § 784.021(1)(a), Fla. Stat. (2000).
[4] See § 790.10, Fla. Stat. (2000).